# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Lily Prince,                                                  Civil No. 13-2316 (DWF/LIB)

          Plaintiff,

v.                                                            **MEMORANDUM**
                                                              **OPINION AND ORDER**

Electrolux Home Products, Inc.,

          Defendant.

---

John J. Neal, Esq., Willenbring, Dahl, Wocken & Zimmermann, PLLC, counsel for Plaintiff.

Keith L. Pryatel, Esq., Kastner Westman & Wilkins, LLC; and Andrew E. Tanick, Esq., Ford & Harrison LLP, counsel for Defendant.

---

## INTRODUCTION

This matter is before the Court on a Motion to Dismiss brought by Electrolux Home Products, Inc. ("Defendant"). (Doc. No. 7.) For the reasons set forth below, the Court denies the motion.

## BACKGROUND

Defendant manufactures upright and chest refrigerators. (Doc. No. 1, Ex. 1 ("Compl.") ¶ 7.) Plaintiff Lily Prince ("Plaintiff") began working for Defendant on November 3, 1997. (*Id*. ¶ 6.) Plaintiff worked as a first-shift employee at Defendant's manufacturing plant in St. Cloud, Minnesota. (Compl. ¶¶ 5-8.) The first-shift ran five

days per week from 7:00 a.m. until 3:30 p.m., with a lunch break from 11:00 a.m. until 11:30 a.m.  (*Id.* ¶ 9.)

Plaintiff worked as the Scott Line operator in the Line 1 group.  (*Id.* ¶ 10.)  The Scott Line is a large machine that forms steel liners for Defendant's freezers.  (*Id.* ¶ 12.)  As the Scott Line operator, Plaintiff unloaded parts from two separate machines, placed the parts on the Scott Line machine, and then pressed a button that joined the parts together to form the freezer liner.  (*Id.* ¶ 13.)  Once formed, the freezer liner moved down the production line.  (*Id.*)

Defendant had a collectively-bargained employment policy in place relating to wages, hours, and terms of employment for Plaintiff.  (Doc. No. 11, Ex. B ("2006-2009 CBA").)[1]  The CBA provides for two ten-minute breaks:  one in the first four hours of the shift and one in the second four hours of the shift.  (2006-2009 CBA at § 7.8; Doc. No. 23, Ex. B ("2009-2012 CBA") at § 7.8.)[2]  While designated simply as a "rest period" or "break," Defendant contends that the breaks provide time for restroom use.  The CBA also provides a grievance procedure and states that if a grievance is not satisfactorily settled through the procedure, the grievance may be submitted to arbitration.  (*See generally* CBA Articles 13-14.)  In such a case, the decision of the Arbitrator shall be binding on both parties.  (*Id.* § 14.5.)

---

[1]     While Defendant's exhibits were originally submitted with the opening and reply briefs without a supporting affidavit, Defendant has since submitted the Affidavit of Keith L. Pryatel (Doc. No. 24) to support the exhibits.

[2]     The 2006-2009 and 2009-2012 CBAs are referred to together simply as "CBA."

In addition, in a memorandum dated January 31, 2001, Defendant published and distributed a notice to employees that addressed restroom breaks along the continuously moving appliance production line:

>  Subject: Opportunity Lost
> 
> Our ability to be competitive in our industry requires that we maximize ALL our resources and continually improve our productivity. This letter addresses an area were [sic] we can and need to improve employees' accountability during times of production, specifically when employees leave their work areas during non-break times. Having YOU absent from your work area negatively impacts productivity and the quality of our products. The following expectations and guidelines will be followed:
> 
> - Employees should use the nearest room during non-break times so as to not disrupt production.
> 
> - When an employee request[s] to use the restroom during work time the leadperson and/or the supervisor must be notified. The length of time and the frequency of requests to leave the work area will be monitored. A reasonable length of time is considered three to seven, (3-7) minutes and no more than twice a day during non-break work time. (Medical necessity to use the restroom more frequently must be supported with appropriate documentation)
> 
>     - Employees must understand that there is an urgency for them to return to their work area. Employees are not authorized to have a cigarette, use the vending machines, or attend to any other non-work activity.
> 
> - Ban the use of cellular phones during non-break times while in the work area.
> 
> During production it is our expectation that all employees will do their best to stay in their work areas. The leadperson may relive [sic] employees who request to go to the restroom. The Leadpersons are responsible for several other activities as outlined in our Working Agreement Article 11.6, and may not be able to relieve you from your work area immediately. Your cooperation is greatly appreciated.

> **Section 11.6.** Leadpersons' duties will include the performance of work in their regular classifications, replacing absent Employees on their shifts, relieving Employees during Employee rest breaks, making work assignments, training and instructing Employees, and other non-supervisory duties assigned by their Supervisors.  Leadpersons shall not have authority to discipline Employees.

(Doc. No. 23, Ex. A.)[3]

Plaintiff claims to suffer from a medical condition that requires her to use the restroom more frequently.  (Compl. ¶ 22.)  On August 2, 2012, at approximately 12:45 p.m., Plaintiff needed to use the restroom and motioned for the leadperson, Eric Nguyen ("Nguyen"), to relieve her so she could use the restroom.  (*Id*.)  Plaintiff claims that Nguyen did not come.  (*Id*.)  At approximately 1:00 p.m., Plaintiff asked Barb Salner ("Salner"), another employee passing by, to let Nguyen know that Plaintiff needed to use the restroom.  (*Id*. ¶ 23.)  Plaintiff alleges that Salner did so, but Nguyen did not come.  (*Id*.)  Plaintiff ran back to where Nguyen was standing and asked to use the restroom, but Nguyen told her he was ordering parts.  (*Id*. ¶ 24.)  Roughly thirty minutes later, Nguyen walked by but did not relieve Plaintiff.  (*Id*. ¶ 25.)  At approximately 1:20 p.m., having not been relieved and fearing retribution for leaving the production line, Plaintiff urinated in a box behind a barrel near her station.  (*Id*. ¶ 31.)  On August 7, 2012, Plaintiff was terminated.  (*Id*. ¶ 34.)

---

[3]   The Court considers both the CBA and the January 31, 2001 memorandum because they are both necessarily embraced by the Complaint.  *See Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999).

4

Plaintiff further alleges that Nguyen had been known not to allow restroom breaks when requested, and on one occasion he set a box next to Plaintiff and told her to urinate in the box instead of the restroom. (*Id.* ¶ 27.) Plaintiff alleges that on another occasion, Nguyen told Plaintiff to urinate in a bucket placed by her station on the line. (*Id.*) Further, Plaintiff alleges that other employees have soiled themselves because they were not relieved from their stations, and one employee resorted to urinating in a bucket because she was not given a restroom break. (*Id.* ¶ 28.)

On April 25, 2013, an arbitration hearing was conducted. (Doc. No. 11, Ex. C ("Opinion and Award").) The issue raised during the arbitration was: "Whether [Plaintiff's] August 7, 2012 discharge from employment violated the [CBA]" and if so, "what shall be the remedy?" (*Id.* at 1.) In a nearly thirty-page Opinion and Award, the Arbitrator explained in detail the background of Plaintiff's termination. In particular, the Arbitrator noted that on November 16, 2011, Plaintiff was put on a "last chance agreement" as a "final warning" regarding Plaintiff's "unacceptable behavior including insubordination and behaving in an aggressive and harassing manner." (*Id.* at 7.) The behavior that led to the "last chance agreement" was not related to bathroom use. (*Id.* at 8.) Defendant claimed that Plaintiff's use of the box to urinate on August 2, 2012 constituted a "health and safety violation while on a condition of employment [last chance agreement]." (*Id.* at 16, 24.) The Arbitrator noted that Defendant relied on both the "last chance agreement" and the alleged safety violation in discharging Plaintiff. (*Id.* at 25.) The Arbitrator concluded, among other things, that:

> To the extent that [Plaintiff's] alleged violation here in issue was considered a health and safety violation, the scheme of the contractual rules governing Major Offenses would not seem to justify discharge considering the alleged offense in isolation. Whether the fact that [Plaintiff] was on a last chance agreement would justify a different result will be considered below.
> . . .
> The fact that [Plaintiff] was on a last chance agreement and the aggravating circumstances with regard to her case, as discussed above, support a significant amount of discipline in this case.

(*Id.* at 25-28.) Ultimately, the Arbitrator decided that Plaintiff's conduct was "not of the kind addressed in the last chance agreement" and that Plaintiff's discharge violated the CBA. (*Id.* at 28-29.)

Plaintiff initiated this action in state court on or around August 7, 2013. (Doc. No. 1 ¶ 1 & Ex. 1.) Defendant removed the action to this Court on August 23, 2013. (Doc. No. 1.) In her Complaint, Plaintiff alleges three causes of action: (1) a violation of the Minnesota Occupational Safety Act ("MOSHA"); (2) a violation of Minn. Stat. § 177.253; and (3) a claim for injunctive relief. (Compl. ¶¶ 35-46.) Defendant now moves to dismiss Plaintiff's claims in their entirety. (Doc. No. 7.)

## DISCUSSION

### I.     Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir.

1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott*, 901 F.2d at 1488. A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous*, 186 F.3d at 1079.

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 550 U.S. 544, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

**II.    MOSHA Claim**

In Count I, Plaintiff alleges that Defendant discriminated and retaliated against her for exercising rights under MOSHA, including but not limited to, reasonable use and access of the restroom. (Compl. ¶¶ 36-39.) Defendant argues that this claim fails as a matter of law.

As an initial matter, Defendant argues that Plaintiff's MOSHA claim fails because there are no rules, regulations, or other law that regulate restroom usage in this case. Minnesota has adopted its own Occupational Safety and Health Act ("OSHA") plan for

7

companies that do business within the state, which is set forth in Minnesota Chapter 182. Minn. Stat. § 182.653, subds. 1-3; Minn. Rule 5205.0010, subparts 1-2. In doing so, Minnesota adopted and incorporated by reference the pre-existing federal regulations for general industries codified at 29 C.F.R. §§ 1910, *et seq*. *See* Minn. R. 5205.0010, 5201.0015. This adoption includes 29 C.F.R. § 1910.141(c)(1)(i), which pertains to employee restroom use in general industries.[4] That rule provides in part:

> Except as otherwise indicated in this paragraph (c)(1)(i), toilet facilities, in toilet rooms separate for each sex, shall be provided in all places of employment in accordance with Table J-1 of this section.

29 C.F.R. § 190.141(c)(1)(i).

Plaintiff maintains that the term "shall be provided" means that employers must allow employees prompt use of the restroom when needed. (Doc. No. 12 at 11.) Defendant argues that the federal regulation does not speak to, address, or otherwise provide a regulatory framework that addresses the frequency of use which must be provided by law.

---

[4] Defendant argues that there is no MOSHA rule that regulates restroom use in manufacturing industries. Plaintiff, however, points out that general standards apply to all places of employment, unless displaced by a specific standard. 29 C.F.R. § 1910.5(c)(1) & (c)(2). In addition, "general industry" refers to all industries not included in agriculture, construction, or maritime. *See* www.osha.gov/SLTC/generalindustry/index.html ("OSHA uses the term 'general industry' to refer to all industries not included in agriculture, construction or maritime. General industries are regulated by OSHA's general industry standards, directives, and standard interpretations.").

In support of her position, Plaintiff points to two OSHA letters to interpret the term "shall be provided" so as to mean that employers must make "toilet facilities available so that employees can use them when they need to do so." First, Plaintiff points to an OSHA memorandum dated April 6, 1998, wherein the Director of Compliance Programs explained:

> This memorandum explains OSHA's interpretation that this standard [set forth in 29 C.F.R. § 1910.141(c)(1)(i)] requires employers to make toilet facilities available so that employees can use them when they need to do so. The employer may not impose unreasonable restrictions on employee use of the facilities.
> . . .
> [T]he language and structure of the industrial sanitation standard reflect the Agency's intent that employees be able to use toilet facilities *promptly*. . . . The most basic meaning of "provide" is "make available." . . . Toilets that employees are not allowed to use for extended periods cannot be said to be "available" to those employees. . . .
> . . .
> In light of the standard's purpose of protecting employees from the hazards created when toilets are not available, it is clear that the standard requires employers to allow employees prompt access to sanitary facilities. Restrictions on access must be reasonable, and may not cause extended delays. For example, a number of employers have instituted signal or relief worker systems for employees working on assembly lines or in other jobs where any employee's absence, even for the brief time it takes to go to the bathroom, would be disruptive. Under these systems, an employee who needs to use the bathroom gives some sort of signal so that another employee may provide relief while the first employee is away from the work station. As long as there are sufficient relief workers to assure that employees need not wait an unreasonably long time to use the bathroom, OSHA believes that these systems comply with the standard.

(Doc. No. 13, Neal Aff. ¶ 2, Ex. 1 ("April 6, 1998 OSHA Memo") (emphasis added).) The memorandum also states that "State Plan States are not required to issue their own interpretation in response to this policy, however they must ensure that State standards and their interpretations remain 'at least as effective' as the Federal Standard." (*Id.*)

9

Second, Plaintiff points to a letter dated April 23, 2003, written by a director of enforcement programs for OSHA. (Neal Aff. ¶ 3, Ex. 2. ("April 23, 2003 OSHA letter").) The April 23, 2003 OSHA letter reads, in relevant part:

> **Question**: In retrospect, would it have been simpler to have issued, instead of an interpretation prescribing a performance (reasonableness) standard, one that mandated a quantitative standard requiring employers to let workers go to the bathroom at least every x minutes or hours?
>
> **Response**: No. The "reasonableness" criterion is consistent with the generally worded requirement in [§] 1910.141(c)(1)(i). Furthermore, it would be difficult to set a specific interval for breaks, because the need to use toilet facilities varies from person to person and even with respect to the same person. . . .

(*Id.*)

Defendant argues that the OSHA letters are irrelevant and are not entitled to any degree of judicial deference by the Court. Defendant asserts that the rule, which requires employers to provide toilet facilities, is clear on its face, and even if ambiguous, the term "provide," according to its approved usage, means "to furnish." Plaintiff, however, points out that MOSHA must be at least as effective as OSHA. *See* Minn. Stat. § 182.655, subd. 13 ("All standards adopted by the commissioner shall be at least as effective as those which are presently or will, in the future, be promulgated under section 6 of the federal Occupational Safety and Health Act of 1970."). Plaintiff further argues that the opinion letters indicate how the term "shall be provided" is interpreted by OSHA and is therefore relevant here.

The Court concludes that, even without deciding how much, if any, deference the opinion letters are entitled to here, at this early stage of litigation, Plaintiff has

sufficiently set forth facts that could show that she was denied access to toilet facilities, and therefore that toilet facilities were not "provided," or made available, to her as required under MOSHA.

Defendant also argues that Plaintiff's MOSHA claim fails because the exclusive jurisdiction for enforcement of substantive safety and health requirements under MOSHA lies with the Commissioner of the Department of Labor and Industry. *See* Minn. Stat. § 182.67 ("The department has sole authority and responsibility for the administration and enforcement of this chapter."). In *Davis v. Boise Cascade Corp.*, 288 N.W.2d 680, 684 (Minn. 1979), the Minnesota Supreme Court held that a plaintiff, who left his job to force the employer's compliance with a safety regulation and was discharged, did not have a right to recover for wrongful discharge. *Davis*, 288 N.W.2d at 684. The court in *Davis* explained that the plaintiff had not discussed or filed charges with the Department of Labor and Industry and thus was not discharged because he had exercised a right authorized under the relevant statute (noting that the statute did not authorize the plaintiff to leave his job). *Id.* Several years later, in *Brevik v. Kite Painting*, *Inc.*, 416 N.W.2d 714 (Minn. 1987), the Minnesota Supreme Court recognized that MOSHA does recognize a private cause of action for retaliatory discharge and explained the holding in *Davis* as follows: "[T]he holding in *Davis* that no private cause of action was authorized is limited to the situation where an employee sought to enforce MOSHA regulations in a private suit *and never exercised any rights under MOSHA such as lodging a complaint regarding working conditions*." *Brevik*, 416 N.W.2d at 717 (emphasis added). Under the

precedent of *Davis* and *Brevik*, there is no private right of action afforded Plaintiff unless she also alleges that she exercised a right under MOSHA.

Based on this authority, Defendant argues that Plaintiff's MOSHA claim fails because Plaintiff has not alleged that she contacted the Minnesota Department of Labor and Industry to complain about her working conditions. (Doc. No. 11 at 12; Doc. No. 23 at 8.) Defendant argues that "Plaintiff's decision to remove her clothing on the Electrolux production plant floor, and urinate in an unsanitary cardboard box in no measure can be construed as 'the exercise by such employee . . . of any right afforded by this Chapter.'" (Doc. No. 23 at 8.) Defendant seems to suggest that the exercise of rights "afforded by this chapter" is limited to actions such as filing a complaint, instituting a proceeding or inspection, or testifying about a proceeding.

Plaintiff, however, asserts that MOSHA affords her a private right of action because she exercised rights under MOSHA (by having to resort to urinating in a box) and was discriminated against in violation of Minnesota Statute section 182.654, subd. 9, when she was terminated for doing so. Minnesota Statute section 182.654, subd. 9, reads:

> **Discriminatory acts prohibited.**
>
> No employee shall be discharged or in any way discriminated against because such employee has filed any complaint or instituted or caused to be instituted any proceeding or inspection under or related to this chapter or has testified or is about to testify in any such proceeding *or because of the exercise by such employee on behalf of the employee or others of any right afforded by this chapter*. Discriminatory acts are subject to the sanctions contained in section 182.669.

Minn. Stat. § 182.654, subd. 9 (emphasis added).

12

The Court agrees that MOSHA affords Plaintiff a private right of action here. The statutory language of section 182.654, subd. 9, specifically prohibits discrimination based on those activities outlined in the statute (filing a complaint, instituting a proceeding or inspection under MOSHA, or testifying about or in such a proceeding) *or* "because of the exercise by such employee on behalf of the employee or others of any right afforded by this chapter." Minn. Stat. § 182.654, subd. 9. "This chapter" refers to Chapter 182— Occupational Safety and Health. Thus, because 29 C.F.R. § 1910.104(c)(1)(i) (requiring employers to provide toilet facilities) is incorporated into MOSHA, Plaintiff's exercise of a right under that rule (using the restroom) could constitute the "exercise of any right afforded by this chapter." Also, this exercise (of her right to use the restroom), alone, could trigger a private right of action. Therefore, the Court concludes, at this early stage of litigation, that Plaintiff's allegations are sufficient to allege that she was discharged or discriminated against because she exercised her rights under MOSHA.[5]

---

[5] Defendant also argues, in its reply brief, that Plaintiff has sued the wrong defendant. In particular, Defendant argues that Plaintiff's Complaint is focused on the wrongful actions of Nguyen, who Defendant claims was a Union employee and an agent of the International Machinists Union, not Defendant. Because this argument was raised for the first time in the reply, the Court does not consider it. *See, e.g.*, *Bearden v. Lemon*, 475 F.3d 926, 930 (8th Cir. 2007) ("This claim was not argued in Lemon's brief in chief and, therefore, we will not consider the argument as '[i]t is well settled that we do not consider arguments raised for the first time in a reply brief.'") (citing *Navarijo-Barrios v. Ashcroft*, 322 F.3d 561, 564 n.1 (8th Cir. 2003).)

**III.    Minnesota Statute section 177.253**

In Count II of the Complaint, Plaintiff alleges that Defendant violated Minnesota Statute section 177.253 by discriminating against her for exercising her rights under section 177.253, and by failing to allow Plaintiff access to use the restroom.  (Compl. ¶¶ 40-44.)  Specifically, Plaintiff alleges that Defendant denied her adequate time from work to utilize the nearest restroom and that Defendant failed to provide its employees "reasonable access to the restroom."  (Compl. ¶¶ 41, 42.)[6]

Minnesota Statute section 177.253 provides:

**177.253  MANDATORY WORK BREAKS**

**Subdivision 1.  Rest breaks.**  An employer must allow each employee adequate time from work within each four consecutive hours of work to utilize the nearest convenient restroom.

**Subdivision  2.  Collective bargaining agreement.**  Nothing in this section prohibits employers and employees from establishing rest breaks different from those provided in the section pursuant to a collective bargaining agreement.

Minn. Stat. § 177.253.

---

[6]  Defendant argues that there is no anti-retaliation provision under Minnesota Statute section 177.253 and that the only private right of action under this provision is one "seeking redress for a violation of Section 177.21 to 177.44" under Minnesota Statute section 177.27, subd. 8 ("An employee may bring a civil action seeking redress for a violation or violations of sections 177.21 to 177.44 directly to district court.").  (Doc. No. 11 at 14.)  Plaintiff argues that her allegations with respect to Count II are not limited to retaliation, and Plaintiff proceeds to argue that Defendant violated section 177.253 by failing to provide adequate time away from the assembly line for restroom use.  Plaintiff does not, however, make any arguments in support of a retaliation claim under this statute.  Thus, the Court considers any such argument to have been waived.

Defendant argues that it, as a matter of law, has provided its employees with "adequate time" to use the restroom as required by section 177.253.  Defendant submits that the allegations in Plaintiff's Complaint factually establish compliance with the statute and, in particular, argues that:  (1) Plaintiff's lunch break, which spans from 11:00 a.m. to 11:30 a.m., cuts across both four-hour halves of her eight hour shift, thus allowing Plaintiff a full half-hour to use the restroom, and (2) that the CBA allots two 10-minute breaks every four hours for restroom use.  Defendant also argues that because a CBA applies here, Defendant was not required to abide by the "adequate time" provision.  *See* Minn. Stat. § 177. 253, subd. 2 ("Nothing in this section prohibits employers from establishing rest breaks different from those provided in this section pursuant to a collective bargaining agreement.").

Plaintiff points out that section 177.253 does not set forth specifics for what constitutes "adequate time" to use the restroom and that such time might vary under different circumstances.  The Court agrees and concludes that the question of whether Defendant provided adequate time under this statute is not properly determined on a motion to dismiss.  Moreover, as discussed below, the CBA does not specifically address the provision of adequate time to use the restroom, and Defendant has not established that it was not required to abide by Minnesota Statute section 177.253.  Defendant's motion to dismiss is therefore denied as to Count II.

## IV.  Preemption

Defendant argues that Plaintiff's claims are preempted by the Federal Arbitration Act ("FAA"), and that Count II of Plaintiff's Complaint is preempted by federal law under Section 301 of the Labor Management Relations Act ("LRMA").

First, Defendant argues that Plaintiff's Complaint is preempted by the FAA because the CBA contains an arbitration provision.  The CBA provision to which Defendant refers states:  "If a grievance is not satisfactorily settled when processed through the Grievance Procedure, the grievance may be submitted to arbitration and the moving party will specify the issue to be arbitrated."  (CBA at § 14.1.)  The arbitration provision also states that the "party desiring to arbitrate a matter which is subject to arbitration shall notify the other party of its intent to arbitrate."  (*Id*. at § 14.2.)  There does not appear to be any reference in the CBA (and Defendant does not point to one) that indicates what claims are subject to arbitration, let alone any reference within the CBA that Plaintiff's MOSHA rights or rights under Minnesota Statute section 177.253 are arbitrable claims.  Because there is no indication in the CBA (and its general and vague language regarding arbitration) that the parties agreed to arbitrate Plaintiff's claims under MOSHA or Minnesota Statute section 177.253, Defendant has failed to establish that there is preemption under the FAA.  *See, e.g.*, *Wright v. Univ. Maritime Serv. Corp.*, 525 U.S. 70, 79 (1998) (explaining that "any CBA requirement to arbitrate . . . must be particularly clear").

Second, Defendant argues that Count II of Plaintiff's Complaint (Minnesota Statute section 177.253) is preempted by Section 301 of the LRMA because it is

inextricably intertwined with the CBA.  The Court notes that the Supreme Court has construed Section 301 as preempting state-law tort claims when the resolution of the state-law claim substantially depends upon interpretation of the terms of a collective bargaining agreement.  *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).  The test is whether the state-law claim is "inextricably intertwined with consideration of the terms of a labor contract."  *Lueck*, 471 U.S. at 213.  However, when the resolution of the state-law claim does not require the interpretation of any term of the CBA, preemption does not apply.  *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988).  Purely factual questions about an employee's conduct or an employer's conduct and motives do not require interpretation of a collective bargaining agreement.  *See, e.g, Taggart v. Trans World Airlines, Inc.*, 40 F.3d 269, 273 (8th Cir. 1994).  In addition, Section 301 cannot be read broadly to preempt non-negotiable rights conferred on individual employees via state law.  *See Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994).

Defendant argues that Count II of Plaintiff's Complaint (violation of Minn. Stat. section 177.253) is inextricably intertwined with the CBA by virtue of the fact that the statute provides that "nothing in this section prohibits employers and employees from establishing rest breaks different from those provided in the section pursuant to a collective bargaining agreement."  Minn. Stat. § 177.253, subd. 2.  Defendant submits that any determination of whether the statute has been violated will implicate the CBA and its interpretation.

Minnesota Statute section 177.253 requires employers to allow "each employee adequate time from work within each four consecutive hours of work to utilize the nearest convenient restroom." Minn. Stat. § 177.253. Defendant asserts that the CBA has established rest breaks that are different from those required by the Minnesota Statute. However, the section of the CBA cited by Defendant—Section 7.8—addresses the provision of rest periods generally, but does not address, specifically, the provision of adequate time to use the restroom.[7] Accordingly, the Court concludes that Plaintiff's claim under the statute is not preempted by Section 301.

## V. Effect of the Arbitration

Defendant also asserts that both of Plaintiff's claims should be dismissed because the result of Plaintiff's arbitration with Defendant is final and binding and should be deferred to here. The Court disagrees.[8] While the arbitrator considered the issue of

---

[7] Nor does the CBA address MOSHA claims or related retaliation claims.

[8] Defendant also submits that Plaintiff's MOSHA claim is time-barred because she failed to file her state-court action within thirty days of her termination. In support, Defendant cites to Minnesota Statute section 182.669, subd. 1, which provides in part:

> Any employee believed to have been discharged or otherwise discriminated against by any person because the employee has exercised any right authorized under the provisions of sections 182.65 to 182.674, may, within 30 days after the alleged discrimination occurs, file a complaint with the commissioner alleging the discriminatory act.

Minn. Stat. § 182.669, subd.1. Based on the plain language of the statute, the thirty-day filing period pertains to administrative actions. The same statute goes on to provide that "[a]n employee may bring a private action in the district court for relief under this section." (*Id.*) Defendant has not established that there is a thirty-day restriction with
(Footnote Continued on Next Page)

whether Plaintiff's termination, after being put on a "last chance agreement" for behavior unrelated to bathroom use, was justified by Plaintiff's use of the box to urinate on August 2, 2012, the arbitration did not specifically address the issue of bathroom access at Defendant's plant or Plaintiff's present claims under MOSHA and state-law.

## CONCLUSION

Based on the foregoing, **IT IS ORDERED** that:

1. Defendant's Motion to Dismiss (Doc. No. [7]) is **DENIED**.

Dated:  February 14, 2014         s/Donovan W. Frank
                                  DONOVAN W. FRANK
                                  United States District Judge

---

(Footnote Continued From Previous Page)

respect to the filing of a private action.  In addition, the statute highlights a choice between two options, specifically providing that an employee *may* file a complaint with the commissioner within 30 days or *may* bring a private right of action.